Case number 183837, United States of America v. Donald Sims, argument not to exceed 15 minutes per side, Ms. Allison Ellert, you may proceed for the appellant. Good morning and may it please the court, Allison Ellert on behalf of Mr. Donald Sims. In late 2015, Mr. Sims was approached by a longtime friend of his who claimed he had been the recent victim of a robbery, and he asked for Mr. Sims' help in procuring a gun. Mr. Sims obliged, even though he was a convicted felon and had no business possessing a gun. But he did locate one and then sell it to his friend, who, unbeknownst to Mr. Sims, was actually working as a confidential informant for the government, helping them to identify drug and gun sellers. Now, almost a full two years later, Mr. Sims was confronted by ATF agents, and he immediately acknowledged his wrongdoing and told law enforcement from whom he had obtained the gun. A few months later, he was indicted, and he promptly pleaded guilty without a plea agreement. His sentencing range was 27 to 33 months. He asked for a sentence at the low end of the range, and the government agreed that a within-guideline sentence was appropriate. Nonetheless, the district judge varied upward by 15 months for a total sentence of 48 months. Now, when the district court did that, it seized on the fact that this was Mr. Sims' second felon in possession conviction. And in the district judge's view, because Mr. Sims had previously been sentenced to a 34-month prison term, and that had not convinced him to not possess guns again, a top-of-the-guidelines range of 33 months was unlikely to fare any better. And so on this basis, the district court believed that he needed a 15-month upward variance to properly deter him from committing this criminal act in the future. Now, we have no objection to the district court taking into account that Mr. Sims was a twice-convicted felon in possession. That was a reasonable thing to do. Nonetheless, the district court made two errors here that make this one of the rare cases of substantive unreasonableness that requires this court's intervention. The first is that the district court gave an unreasonable amount of weight to the bare fact of Mr. Sims' recidivism. It's critically important in this case, and unusual, that there was a two-year time gap between the commission of the offense and the indictment. And the record over that two-year period— A time gap in which he did not know he was being watched or was subject to charge. I think that's exactly right, Your Honor. And there seems to be some speculation by the district judge to the effect that, well, maybe he did know he had come under federal scrutiny during that two-year period. But that is really— There's nothing in the record to support that. Nothing in the record to support that, no. And the reason there's nothing in the record is because the government conceded that it wanted to get the maximum use out of its confidential informant, which it couldn't do if its informant's identity had been compromised. So the logical inference is, of course, that Mr. Sims didn't know that his friend was working in this capacity. Now, going back to what the record shows about that two-year period, Mr. Sims was living an ordinary, law-abiding life, and he showed substantial signs of having made real progress toward rehabilitation. He was working. His employer praised his work ethic and his work performance. He was involved in the lives of each of his three sons, including one young man who had been adopted by another family. He had married, and he was involved in helping to raise his wife's grandchildren. Now— He was previously on supervised release and had some problems sometime before, right? That's true. He was on three years of supervised release in connection with his first felon and possession conviction. He did violate, but those violations were not new law violations. He didn't possess a gun again while on supervised release. He had marijuana tests that he failed, right? That's true. I believe there were two marijuana tests he failed, and it also appears that there were one or more occasions on which he did not report into probation, and he served a 10-month revocation sentence in connection with that. Now, the district judge did rely on that in part in sentencing him above the guidelines, but I don't think that either of those considerations reasonably take this case outside of the heartlands. We've seen a sea change in marijuana regulation in this country. Mr. Sims clearly has a marijuana problem, but he's never been a dealer. He's not a manufacturer. He's had a few state court possession charges, but I don't think that that really thrusts this into above guidelines territory. I'm struggling a little bit with how the standard works here. A district court can put heavy weight on one factor if it's appropriate, but if it puts too much weight on it, then that's substantively unreasonable. How do we distinguish? How do you suggest we draw that line between heavy but appropriate weight versus too much weight, and why was too much weight given to this recidivism-type argument in this case? Well, that's a very good question and a very difficult one to answer. There's certainly no mathematical formula here. There could certainly be cases in which recidivism would justify an upward variance, but on the unique facts of this case, I think it really doesn't for the reasons I've just stated. And here, I think a fair reading of that sentencing transcript is that the court really treated the recidivism issue as dispositive. It was the lynchpin of this above-guideline sentence. It gave virtually no consideration, I think, to this two-year interval that shows substantial signs that Mr. Sims had matured. He was in his late 30s now, and it probably wasn't good. Do we have any cases on that issue? Is it like a pepper thing? What is the two-year interval? What do we do with that in terms of our cases? I mean, it seems like a unique kind of situation. They wait so long to charge him. He's not in custody. If he were in custody, then his rehabilitation efforts would be relevant, right? I mean, is that what it is? Candidly, this is not a situation I've seen before. I mean, I think this is an unusually and abruptly long period of time for a defendant to have been left out in the community after commission of the offense. But at sentencing, the district judge's job is to consider the totality of the circumstances. And if I'm a sentencing judge and I'm trying to assess what's the likelihood that this person is going to reoffend, what's going to properly deter them, I would think that the preceding two years prior to the indictment, the conduct the person has manifested during that period is at least as probative, if not more probative than what they did. Well, isn't that part of his, I mean, if he said, hey, I was going to give you 60 months, but I'm going to give you 48. I mean, he did, I mean, so he says at sentencing, I was going to give you more, but I'm convinced by some of your arguments, so I'm going to give you 48. Yes, and I think we're certainly grateful that he didn't vary upward at 27 the way he indicated he was initially inclined. But that doesn't make the 15-month upward variance okay. It's still a substantively unreasonable sentence. The district court varied what, about 12 months higher than the recommended guidelines? Fifteen months higher. Fifteen, okay. From 33 up to 48. How many steps is that, one more step? I'm not sure, Your Honor. I don't know the answer to that question. If the district court had varied by two months, would that have been too much? I think on the facts of this case, any upward variance was too much, but I'm not asking this court to reweight the factors. I'm asking you to send it back to the district court to do that. But if he'd been within the guideline range, it would have been okay, right? He asked for a sentence at the low end of the guidelines, and again, the government agreed that that was appropriate. I believe the probation report also did. So you had a variety of actors in the system here, except for the district judge, who thought a within-guideline sentence was appropriate. I'm back kind of to what standard it is that we have here. When Gall came out at the same time, Kimbrough came out. And our Herrera case cites Kimbrough and quotes Kimbrough to say that a sentence that departs from the advisory range in a mine run case warrants closer review. Your argument is that this is a Heartland case. Yes. This is a mine run case. Exactly. So what does closer review mean for us? I think closer review means that you have to satisfy yourself that the district court took reasonable consideration of all of the available factors. And here, I don't think one can read the sentencing transcript and come to that conclusion because so much weight, again, I think virtually dispositive weight, was put on this one characteristic that he was a two-time felon in possession offender. And it entirely minimized other pertinent information as to what was a just and appropriate sentence for this particular defendant. The other issue I would go to is disparity. The district judge here made a passing reference to the fact that this sentence might indeed be disparate to that of other similarly situated defendants. But it didn't delve into or analyze that question, and it had an obligation to do so. Now, we've put before the court what I think is substantial case law, at least ten cases in total from this circuit in felon in possession cases that show that the common thread for when felon in possession defendants receive upward variances is a history of violence. It's that propensity to commit acts of violence that drive... But didn't all those cases involve greater variances upward? In other words, if you're saying we have these cases, they approve these upward variances, this is not that case. But yes, it's not that case, but it's also not that kind of upward variance either, right? Those cases that put you in that box don't necessarily establish the opposite proposition, that this upward variance was wrong, right? It could just be a continuum, and this case is somewhere in that continuum. Well, yes. I mean, I do think I cited at least three or four cases in which the upward variance was lower. But you're never going to have a one-to-one comparison. I mean, every case has its own facts, its own defendants with their unique history, unique details of each crime. But I do think it's relevant. And I didn't cite to the court just one or two cases. I gave you at least ten. And that suggests to me that there is now a collective wisdom among federal judges about when an upward variance is appropriate in a felon in possession case. And, again, the through line in that case law is a history of violence, and it makes perfect sense. But just because we approve something doesn't mean we disapprove others. We don't know what would be disapproved. We know that we've approved certain things, right? It doesn't stand for the other proposition. It only stands for we've approved these. Then maybe they all look similar, maybe they look alike. But this is sentencing. You have different factors. Different things are taken into consideration by the district judge. So I'm not sure that they necessarily establish the proposition that this one is inappropriate. That's a fair point. But I do think if there was a contrary body of case law that showed that nonviolent offenders like Mr. Sims also commonly received above-guideline sentences, we would have seen that case law from the government, and we don't. They didn't point to any contrary case law to that effect. So I think it is meaningful what these cases are telling us about when it's appropriate to sentence above the guidelines. Does it make any difference if the person is selling it on the street? Well, the district judge cited that as an aggravating factor, that it believed warranted an upward guideline sentence in addition to the recidivism. That's pretty aggravating, isn't it? That's where all these illegal guns come from. Well, I mean, I think it's probably true that selling is worse than, say, stashing it somewhere in your home. But, again, I would look to the particular facts of this case. There's no dispute that Mr. Sims isn't a gun trafficker. He didn't go out and obtain this gun in aid of any other criminal activity the way we so often see and say drug dealers obtaining guns to protect their drug trade. What about selling ammunition and the gun? Well, that, too, is probably worse. I mean, it did make the gun effective. But even then, I don't think that that factor, in light of the totality of the circumstances here, catapults this case into above-guidelines territory. And, in fact, we cited to the court cases in which felons who sold guns and ammunition still received within-guideline sentences. You'll have your rebuttal time. Thank you. Good morning, Your Honors. My name is Matthew Simcoe. I'm representing the government in this argument. Counsel, may it please the court. District judges are given great discretion when imposing a sentence. And absent the failure to consider a required factor or the consideration of an impermissible one, this court reviews that sentence as an abuse of discretion. Counsel has indicated that the district court here relied only on one factor when it determined its sentence in this case. This court has held that a district court can consider or put great weight on one factor, and that it is not error in and of itself to consider just that one factor. But in this case, the court considered a variety of factors,  It started out with considering the defendant's record or appellant's record in this matter, which included an aggravated assault with a firearm adjudication as a juvenile, three adult state burglary convictions, and then the felon in possession of a firearm conviction in federal court. What I'm struggling with here is this kind of distinction between the mine run, heartland, if we use pre-Booker language, case, and when you are in the heartland and you vary above, how the court is to scrutinize that. What I'm struggling with, particularly in this case, is that the thing that this court kept coming back to is already inherently considered. 922G is about someone who is committing the same crime, who is having possession again. The guidelines account for his criminal history. Why is this idea that he is a recidivist not an improper placement of weight on a singular factor? I think in this case, the guidelines do take into account prior convictions, but not necessarily what those convictions are. They can give weight to crimes of violence or drug trafficking, but not beyond that. The mere fact that it was a prior felon in possession conviction to this court was significant because obviously he knew just what happens when you do possess a firearm in this case. To so quickly do the same thing over again seemed to be that this defendant just wasn't essentially getting the message, being deterred. How about the two years? The two years between? There's two years after he did this one event, and there's nothing else. Well, it's not that there's nothing else. It's true that he did not have another felony conviction in that time frame. He has a couple traffic convictions in that time frame. But also, as he admits, he continues to use drugs. He was a sort of sparsely drug user earlier in his life. He accelerated that use to daily use up until the time of his arrest. And so earlier it was this drug use that sent him back to prison before. That didn't seem to deter him. He continued to use and abuse drugs up until the time of his arrest. So it's not exactly that he was crime-free during this period of time. He just didn't have a felony. This is his smoking of marijuana. This is his smoking of marijuana. If he had been charged with that, what would the punishment for his crime have been? Charged with possession of marijuana. Not sale, possession. I think it's a misdemeanor. Three months? Pardon? I think I calculated it was three or four months. It's about that, Your Honor. It could be about that. That's a pretty big difference from what the upward variance was, isn't it? But you're saying he was a habitual user of marijuana. He was a habitual user, but I think what— But he wouldn't have been allowed to own or have a gun. Even at that point. Even if he wasn't a felon. Correct. Under federal or state law. But I think to the court, what was important to them was just how much he was not being deterred. He went back to prison for this very conduct, the drug use, the possession of— or felony possession of a firearm, and he just wasn't being deterred. And it was—I think that—it wasn't necessarily the drug abuse in and of itself, but the mere fact that it just—nothing seems to be working with this defendant. I guess what I'm struggling with is that it seems like we have a young man caught in this school-to-prison pipeline as a kid, and he's tangled in it forever. He gets out, finally begins to get his life back together. He marries. He's a parent. He keeps up a relationship with a child that got—with his child that was adopted by someone else. That parent comes in and says, this is a guy who's making a positive difference in the baby that we adopted. You know, the school people say, this man comes and participates in the school. The kids love to see him. That, to me, is somebody whose attention you've gotten and who is making the real effort to change his life. And I'm struggling to see somebody who comes from where this guy comes and makes the changes he makes in his life. And it seems like ever getting away from the errors of his youth and the basis of his life is an impossibility. And that's—I find that problematic. Well, and during this period of time when he's supposedly crime-free, I mean, this is the period of time where he's continued to abuse drugs, and I understand that's marijuana, but it is not as if he is just, you know what, I've absolutely gone straight. No, I continue to go out and purchase an illegal substance and abuse it. An illegal substance where he is, maybe not in other places. I don't dispute your argument. I just—the purpose of sentencing is to convey to the public the fairness of the sentence and the propriety of the sentence in that one case. And I'm struggling with that concept here, particularly on our closer review because of how much over the guidelines this went. It feels to me like the guy's caught in a system that he can never get out of. It might be—no, it is, I think, a major change in this guy's life to do the things that he is doing and avoiding the things that he's avoiding. It might not seem like much to us, but where he comes from, it's a whole lot. So I'm struggling with the idea that on closer review, this is not perhaps so far a simple Heartland case that's being punished as if it was beyond the Heartland. And two points to that. One, I think these past two years prior to his actual arrest, he did not have a felony conviction. But as far as this sort of period of his life, he started out with the aggravated assault adjudication and then the two burglary convictions in Ohio early on in life. He then went through a period of time when he wasn't committing crimes. But starting in about 2008, it started to accelerate, actually. He gets a burglary conviction in Georgia. He then gets the felon in possession of a firearm two years after that. He then gets the supervised release violation, sent him back to prison. And then he gets the new felon in possession conviction of that crime. So over this six-year period, he's actually accelerating in his crimes, not decelerating. And as far as the actual variance in this case is concerned, it is 15 months. And as not an extreme variance, I think this court considers it. Is the next category up, or do you know? I don't, Your Honor. I mean, it's 45% or whatever over the top range, right? It was 27 to 33, and he gets an extra 15. So that's 40 whatever percent, isn't it? 45%? I think cases have said try not to do a mathematical determination of this. But one point to consider as to that is if you consider his prior sentence was 34 months, he hadn't had to go back for an additional 10 months. And if you consider that as being 44 months, this is really just four months beyond the time he could serve in relation to the earlier case. How much time passed between when he got out than when this sale occurred? Of the supervised release? Yeah. Probably about a year. He got out, it's a year, and then the government waits two years to charge him. And that has to do with the confidential informant? He was a working confidential informant. He continued to make other cases, and essentially to arrest the defendant early on would essentially terminate his efforts in those other cases. Was he an informant on drug cases or firearms or both? It indicates in the record both, Your Honor. And I don't know the particulars of the other cases that he was working on, but it was related at sentencing that he continued to work other cases, and the reason essentially his cover would have been blown had the fact that they had arrested him earlier. And, you know, it's not unusual for the government to do stuff like that. We run wires for long periods of time. We do long-term investigations. And so it's not entirely accurate to say that this is unusual, that we're not essentially arresting someone immediately. If an informant or a case is continued to develop and bring other cases in. It seems unusual in a case where this particular defendant is supposedly dangerous or he can't be reformed or, you know, why are you not getting him off the street right away? I mean, it seems strange that this would be a person subject to an upward variance, and yet he's the one who's left on the street for two years after the event occurs. And I can't say to the nature of the other cases he was working if those were such that, you know, they were in every case where you don't immediately arrest a defendant, you hold your breath, you know, that something bad won't happen. But there could have been these other cases that were causing them to not arrest him immediately. But in this case, I guess they didn't arrest him immediately, and they did approach him later on. I mean, it wasn't in the beginning, but they did inform him in this two-year period that they had happened. They approached him and asked him if he would, you know, work with them. So he was aware at some point that, you know, essentially we were coming back for you someday, and that could have been, as the court noted, some period of time in which he was aware. So he was approached about being an informant himself, right? Correct. So in that discussion, did they say, oh, by the way, we know that you sold illegally in there? Yeah, and that was why they approached him. They approached him to say, hey, basically we have this charge. We are coming back for you someday. Would you like to work with us instead? So this period of time in which he is crime-free, you know, aside from the drug use, he was aware that the government had this case. No, but that was two years. It was two years until his arrest in this case, but there was a period of time prior to that that they did approach him and say, and it wasn't like necessarily a considerably long period of time, but prior to indicting him, they did approach him and say, hey, we are aware. This event happened. We're aware of it. Somewhere within this two-year, I'm sorry. No, that's correct. Somewhere within this two-year period, they approached him. Is that what you're saying? That's correct. Between the time of the sale and the time of the indictment, they approached him. Yes. Do you know when? It was when they told him. Yeah, they told him. When they told him, we've got you. Right. And we want you to be an informant. Correct. And he said, I can't be an informant. Correct. Right, and then he was indicted. So it's not as if he, perhaps your opposing counsel knows the answer to that, but I understood that there's this two-year bracket. They come to him and say, we've got you. Be an informant. He says, I can't be an informant. They indict him. They do. It's not the next day. I understand there's a period of time when he's aware this is coming, and I don't want to suggest that this entire two-year period he's on notice. I can't screw up because I know. But it's not a year. It's not in the middle or something, right? I think it's probably in the last 25% of this period of time, so I think it's something more like five months or four months, something like that. And one other period about this sentence in and of itself, his last sentence for possession of a firearm or sentence was 34 months. So that's one month longer than the sentence in this case, and it would seem illogical to sentence him to less for committing essentially the same crime or more crimes. Didn't you agree that he should be within the guidelines? The government did recommend a guideline sentence. So the government thought a guideline sentence was appropriate. So the question is not what the government did, because the government agrees he ought to be within the guidelines. The question is whether it's substantively unreasonable for the judge to have decided that a 45% increase in this particular case is appropriate. Right? Isn't that what's before us? That's correct. But to say that the last sentence was 34 months or one month less, I'm sorry, one month more than this prior sentence, I think sends the wrong message essentially, and that's what the judge felt. And he articulated that all over the record, that essentially if I'm going to sentence him to less time than he got the first time, what message is that sending to this defendant? Certainly he's not being deterred by all this other stuff. Now I'm reducing the sentence that I will give you for the exact and additional conduct would seem not to be not only unreasonable in and of itself, but illogical as far as criminal sentences are concerned. Your time's up. You want to summarize and finish? That's fine. No, that's fine. That was my summary. Thank you. To address the court's question about precisely when he was approached by law enforcement agents, recall that the gun sale occurred on January 5th, 2016. He was approached by the ATF agents confronting him about this episode in December 2017. In fact, the date in the sentencing transcript that was given was December 15th, 2017. That's at page ID 144 of the sentencing transcript. So that is almost a full two years after his commission of the offense and before he was indicted in March of 2018. As to counsel's representation that in fact his criminal conduct was accelerating, that simply in my view is not true. If you look at his offenses since his release from prison in connection with his first felon in possession case, they're almost all these minor driving offenses related to an invalid driver's license or invalid license plates. He did have two possession, marijuana possession charges, both of which he received fines for, and he had a disorderly conduct charge for which he received probation. So I think what we're seeing with this defendant is someone who did have, he does have a number of convictions, but the severity occurred in his teenage years, in his 20s. We're seeing someone who's maturing, who's figuring out how to get his life together, and who's beginning to age out of crime. And I think to affirm this sentence really is sending the wrong message. It's telling defendants, even if you do as we urge you to do and try and develop meaningful relationships, get employment, do the things that will help you lead a productive life, it's not going to matter because not only are you going to be punished, and Mr. Sims has never sought to evade punishment here, but it says to him and others, not only will you be punished, but we're going to punish you even more harshly. And so what's the point of having undertaken all that effort? Wouldn't it look strange? I mean even more harshly than what? I mean he ended up spending, getting 44 months for the first conviction. So 33 months would be, or whatever in the range would be less punishment, wouldn't it? Well less punishment than he received in connection with the first conviction, yes. But the. But what message does it send to have somebody who commits the exact same crime or not, maybe not the exact felon in possession, but I mean maybe even harsher or even worse selling the gun on the street with ammunition and then you get, you know, you get a lower sentence, right? I would agree with your honor if what happened here is he was released from prison in connection with the first felon in possession offense, and shortly thereafter he goes out and does it again. I think then we say, well wait a minute, you really are not getting the message. But to go there now is to really entirely ignore this two year period that is a completely different period in his life, in which I think as your honor said, Judge Strang, he's being much more thoughtful about his choices, he's trying to do the right things, and he ought to get some credit for that. And this incremental 15 month additional punishment isn't serving any purpose for someone like that. It's just burdening the taxpayers with 15 more months of incarceration time for him. And it makes it all that much harder for him once he's released from prison to get back on track. The longer he spends there isn't going to help him, and it's not going to help his family members. Unless the court has any other questions, our view is this sentence is disproportionate to the nature of the offense and the nature of Mr. Sims' background, and we would ask the court to reverse and remand for a fresh sentencing proceeding. We thank you both for your arguments and your briefing. The case will be taken under advisement. The remainder of our cases today are not for argument. They're on briefs. So you may adjourn court.